IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENSERV INTERNATIONAL, LLC § | | Case No. _____ |
| *Plaintiff,* § | | |
| § | | |
| V. § | | |
| § | | PLAINTIFF ENSERV |
| UNITED STATES OF AMERICA acting by and § | | INTERNATIONAL, LLC'S |
| through THE UNITED STATES CUSTOMS § | | ORIGINAL COMPLAINT |
| AND BORDER PROTECTION; THE UNITED § | | |
| STATES DEPARTMENT OF JUSTICE; THE § | | |
| UNITED STATES DEPARTMENT OF § | | |
| HOMELAND SECURITY; THE UNITED § | | |
| STATES DEPARTMENT OF COMMERCE; § | | |
| and THE BUREAU OF INDUSTRY AND § | | |
| SECURITY § | | |
| *Defendants.* § | | JURY TRIAL DEMANDED |

## PLAINTIFF ENSERV INTERNATIONAL, LLC'S
## ORIGINAL COMPLAINT

COMES NOW, Plaintiff, ENSERV INTERNATIONAL, LLC complaining generally of the UNITED STATES OF AMERICA acting by and through THE UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES DEPARTMENT OF JUSTICE; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES DEPARTMENT OF COMMERCE; and THE BUREAU OF INDUSTRY AND SECURITY, and in support thereof would show unto the Court the following:

## I.
## PARTIES

1. Plaintiff, ENSERV INTERNATIONAL, LLC is a Dubai Company doing business in the United States, and this cause of action arose out of that business conducted in the United States.

2. Defendant, THE UNITED STATES OF AMERICA is a governmental agency subject to tort claims under the Federal Tort Claims Act. The cause of action and negligent acts of the United

States Government took place in the Southern District of Texas. Service can be had upon the United States of America by serving THE UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF TEXAS, NICHOLAS J. GANJEI, AT HIS OFFICES LOCATED AT 1000 LOUISIANA, SUITE 2300, HOUSTON TEXAS 77002, or wherever he may be found.

## II.
## JURISDICTION

3. This case is brought pursuant to the Federal Torts Claims Act and therefore jurisdiction is conferred by the terms of that statute (28 USCS §1346 (b)(1)) and Federal Question jurisdiction. The amount sought by the Plaintiff is in excess of the minimal jurisdictional limits of this Court.

## III.
## FACTS

4. This is a case of governmental indifference, arrogance, incompetence, and negligent trampling upon the property rights of the Plaintiff.

5. The United States Border and Customs Protections (hereinafter "CBP") seized and held the property of Plaintiff Enserv International, LLC (hereinafter "Enserv") from February 21, 2014, until September of 2023. That seizure and holding of Enserv's property was unlawful. The seizure and holding of Enserv's property was negligent and grossly negligent.

6. Enserv is a Dubai company doing business in the Middle East in the oil and gas industry. Enserv purchased in the United States, two "Skid Mounted 180k Coiled Tubing Units" and one "Coiled Tubing Unit Trailer Master Assembly" with related parts and assemblies that had a total fair market value of approximately $3.3mm USD. (Hereinafter "The Equipment") Enserv sought to ship The Equipment to United Arab Emirates where The Equipment was to be leased to the oil

and gas industry in the Middle East, excluding Iran, for a profit to Enserv. On or about February 21, 2014, CBP illegally and without good cause, seized The Equipment.

7. On or about January 31, 2014, Counsel for Enserv wrote a letter to J. Vaquera of the CBP Outbound Enforcement Team/Seaport inquiring about the reason for the detention of The Equipment. There was no response to this inquiry. On or about February 7, 2014, Counsel for Enserv wrote to Mr. David Fluty, Port Director of U.S. Customs and Border Protection asking for the reason for the detention of The Equipment. Counsel for Enserv received no answer to this formal inquiry. On or about February 21, 2014, CBP issued a Notice of Seizure for The Equipment. On or about February 27, 2014, Ahmad Almur Mejren Sultan, Chairman of Enserv wrote a letter to Cilia Grau of Fines and Penalties at the CBP asking for an explanation of the seizure. There was no response to this inquiry. On or about March 10, 2014, Enserv received the Notice of Seizure from the CBP. On or about March 11, 2014, Enserv signed and served a Notice of Election of Proceedings and filed a formal Petition to regain possession of The Equipment. Enserv elected to have its Petition considered administratively. No action was ever taken on Enserv's Petition to this day. On or about March 31, 2014, Counsel for Enserv sent a letter to Dave Fluty, CBP Port Director regarding the seizure of The Equipment. Enserv Counsel noted that it had been months since The Equipment was detained and Enserv had not received any explanation for the basis of the detention or seizure. There was no response to this letter.

8. On or about April 16, 2014, Enserv Counsel again sought to get some sort of explanation for the seizure of Enserv's property. This time Enserv's Counsel wrote to Brian Moskowitz, Special Agent in Charge, Houston Homeland Security Investigations. Counsel for Enserv requested a meeting with Homeland Security to discuss the seizure of The Equipment. There was no response to this inquiry by anyone with CBP, Homeland Security, or the Federal Government.

9. On or about July 3, 2014, Enserv Counsel wrote to Special Agent Calvin Bradford of Homeland Security, inquiring why the Equipment was being detained. There was no response to this letter.

10. On or about September 13, 2014, Enserv Counsel wrote a letter to Special Agent Calvin Bradford with U.S. Homeland Security Investigations seeking some explanation for the seizure of Enserv's property. There was no response to this inquiry. On or about September 24. 2014, Enserv Counsel wrote a letter to Special Agent Calvin Bradford with U.S. Homeland Security Investigations. This letter provided information requested by Agent Bradford. Enserv fully explained and provided evidence confirming that The Equipment was not subject to seizure. There was no response to this letter.

11. On or about January 12, 2015, Enserv Counsel again wrote to Special Agent Calvin Bradford requesting a meeting to discuss proper maintenance of The Equipment while seized and stored by CBP. There was no response to this inquiry. On or about October 14, 2016, Enserv Counsel sent yet another letter to Special Agent Bradford and included Special Agent Ron Kruger of the Department of Commerce Bureau of Industry and Security as well as Celia Grau of Fines and Penalties for CBP. The letter again sought some sort of explanation for the seizure by anyone with the federal government and noted that no action had been taken on Enserv's Petition for Release. There was no response to this inquiry. On or about November 15, 2016, Enserv Counsel sent a letter to Mark Dawson (CBP), Trey McClish (Resident Agent in Charge-CBP), Charles Perez (Port Director-Houston, CBP) pointing out that Enserv had not gotten any response from anyone at the U.S. Government regarding the seizure of The Equipment. There was no response to this inquiry. On or about November 22, 2016, Enserv Counsel sent another letter to Cilia Grau

(Fines, Penalties & Forfeiture Officer-CBP) requesting an opportunity to inspect The Equipment. There was no response to this request. On or about August 24, 2018, Enserv Counsel sent a letter to Mark Dawson, Calvin Bradford, Trey McClish and Ron Kruger following up on his latest request in 2016 and inquiring about the status of The Equipment. There was no response to this request.

12. On or about April 24, 2019, Enserv Counsel sent a letter to Mark Dawson, Calvin Bradford, Trey McClish, Ron Kruger and Celia Grau putting them on notice that Enserv has suffered great economic harm, estimated to be approximately $3.3 million related to the seized property. There was no response to this letter. On or about June 14, 2019, Enserv Counsel sends a letter to Mark Dawson, Calvin Bradford, Trey McClish, Ron Kruger, and Erick V. Whitiker Sr. (Supervisory Paralegal Specialist-CBP) again stating that to date, no agency has offered any explanation or reason for the seizure of The Equipment. There was no response to this letter. On or about July 19, 2019, after having been told that the continued seizure was related to a criminal case, Enserv Counsel wrote a letter to Mark Dawson, Calvin Bradford, Trey McClish, Ron Kruger and Erick V. Whitiker Sr. asking what if any relevance that criminal prosecution has to do with The Equipment. There was no response to that letter. On or about August 9, 2019, after having examined the file of the criminal matter pending in Houston (Cause No. H-18-CR-199-S3) there was no apparent relationship between that prosecution and The Equipment. Enserv Counsel requested some explanation of the alleged relationship. There was no response to this letter.

13. On or about February 22, 2021, Enserv Counsel wrote a letter to Mark Dawson, Calvin Bradford, Trey McClish, Ron Kruger and Erick V. Whitiker Sr. pointing out that the alleged reason for holding the seized equipment, the alleged criminal proceeding, had been fully resolved and therefore the equipment should be released as soon as possible. There was no response to this letter.

14. On or about August 3, 2021, Enserv Counsel sent a letter to Mark Dawson, Trey McLish, Ron Kruger, Erick V. Whitaker, Sr. informing them that Enserv had been told that the U.S. Department of Justice had jurisdiction over the seizure of The Equipment and that CBP has been instructed not to release the equipment because of some pending criminal case. On or about January 31, 2022, an email from a CBP paralegal, Trini Williams, to Counsel for Enserv confirms the Cause Number of the pending criminal proceeding that is allegedly holding up the release of The Equipment. Neither The Equipment nor Enserv nor any of Enserv's representatives were the subject of that criminal case or investigation.

15. On or about February 14, 2022, Counsel for Enserv replies to Trini Williams noting that the cause number supplied by her is different to the cause number Enserv was originally given as a justification for the seizure and holding of the Equipment. On or about August 2, 2022, CBP paralegal Trini Williams gives another cause number of a criminal matter that she now says is the reason for the seizure and holding of The Equipment and states that CBP cannot release it until the United States Department of Justice clears that criminal matter. Neither The Equipment nor Enserv nor any of Enserv's representatives were the subject of that criminal case or investigation. As of December 27, 2022, all criminal matters cited by CBP as a justification for holding the seized Enserv property were concluded.

16. On or about December 27, 2022, Counsel for Enserv sends an email to U.S. Attorney Alamdar S. Hamdani stating that all criminal matters used as a justification for holding Enserv's property had now been concluded and demands immediate release of the equipment. There was no response to this demand.

17. On or about January 27, 2023, the USDOJ finally gives written permission to CBP to release The Equipment back to Enserv. On or about February 9, 2023, CBP issues a Decision Letter

remitting The Equipment to Enserv, but requests Enserv sign a Hold Harmless Agreement and reimburse CBP $469,796.34 in storage costs for The Equipment. In August of 2023, CBP waives the requirement that Enserv sign a Hold Harmless Agreement as a condition for returning The Equipment to Enserv. On or about August 4, 2023, CBP waives the requirement that Enserv pay storage fees as a condition of returning The Equipment to Enserv. On or about September 27, 2023, The Equipment is returned to Enserv.

18. On or about March 25, 2024, Enserv received a "WARNING LETTER" from the United States Department of Commerce, Bureau of Industry and Security. This letter sets out alleged facts and circumstances that justified the holding of The Equipment. The letter is riddled with inaccuracies and false statements. However, in an attempt to corroborate the facts and circumstances cited in the letter, Enserv sent requests for documents pursuant to the Freedom of Information Act, to The U.S. Customs and Border Protection, United States Homeland Security Investigations, United States Department of Homeland Security, United States Department of Commerce Bureau of Industry and Security, United States Department of Justice. Referencing all the alleged criminal investigations that held up releasing The Equipment and clearly identifying The Equipment the FOIA requests sought:

1. The entire CBP file related to the seizure and continued detention of Enserv International, LLC's property including but not limited to internal communications, documents related to the decision to seize and detain the subject property, communications with any other United States agencies or personnel regarding the seizure and detention of the subject property, and/or communications with personnel at the U.S. Department of Justice regarding the seizure and continued detention of the subject property.

2. All communications from personnel at the U.S. Department of Justice with any other United States agency, including but not limited to the U.S. Customs and Border Protection, Department of Homeland Security and or Department of Homeland Security Investigations and/or Bureau of Industry Security that related in any way to the subject property.

3. The entire Department of Homeland Security and/or Homeland Security Investigations file related to the seizure or continued detention of Enserv International, LLC's property including but not limited to internal communications, documents related to the decision to seize and detain the subject property, communications with any other United States agencies or personnel regarding the seizure and detention of the subject property, and/or communications with personnel at the U.S. Department of Justice regarding the seizure and continued detention of the subject property.

4. The entire United States Bureau of Industry and Security file related to the seizure or continued detention of Enserv International, LLC's property including but not limited to internal communications, documents related to the decision to seize and detain the subject property, communications with any other United States agencies or personnel regarding the seizure and detention of the subject property, and/or communications with personnel at the U.S. Department of Justice regarding the seizure and continued detention of the subject property.

19. There was no response from most of the agencies from whom the FOIA was directed. On December 24, 2023, the U.S. Department of Justice sent a letter stating, "A search for records located in the United States Attorney's Office for the Southern District of Texas has revealed no responsive records regarding the above subject." CBP was the only agency to respond to the FOIA request by Enserv. CBP produced approximately 1062 pages of documents. There were no documents that supported or confirmed the allegations in the "WARNING LETTER" sent by the United States Department of Commerce, Bureau of Industry and Security. As a result, Enserv still does not have any confirmation of why the United States Government held The Equipment from February 21, 2014, until September of 2023.

20. Among the documents produced by the CBP pursuant to Enserv's FOIA requests is a redacted email between a Paralegal Specialist (name redacted) for Fines, Penalties and Forfeitures at CBP and a Senior Attorney (name redacted) for CBP Associate Chief Counsel Office. While this email is highly redacted, it appears that the Senior Attorney takes a stab at trying to explain

why the U.S. Government held The Equipment for 9 years. In response, the Paralegal Specialist writes,

> *"was the most interesting way I've ever heard this explained LOL. I just love your emails, they're like having a real life conversation with you 😊 It's all crystal clear to me now." (CBP-FO-2024-094697-000381)*

Apparently, there is no good explanation for the United States Government seizure and holding of The Equipment except lighthearted contrived explanations the CBP redacted from the FOIA production.

21. As a proximate result of the United States Government negligent and grossly negligent seizure and holding of The Equipment for approximately 9 years without any legal justification, Enserv has suffered extreme damages. Enserv is in the business of providing oil field services to the oil exploration and production industry in Dubai and the Middle East excluding Iran. The Equipment was seized and wrongfully held by the above referenced Federal Agencies from February 21, 2014, to September 27, 2023. Enserv had commitments and customers who were willing to lease the Equipment for oil field services upon shipment to the Middle East. The Equipment seized and wrongfully held by the above referenced Federal Agencies would have enabled Enserv to market The Equipment for both land-based oil and gas exploration and production projects as well as offshore oil and gas exploration and production platforms.

22. Further, the above-cited Federal Agencies were negligent in the storage and maintenance of The Equipment from the time it was seized to the time it was returned to Enserv, rendering it worthless. Enserv lost tremendous amounts of revenue and profit because of the negligent seizure of The Equipment thereby preventing deployment. Enserv lost the total value of The Equipment because of the lack of proper storage and maintenance of The Equipment.

23.     The Equipment was improperly stored and improperly maintained as a result of the negligence of the United States Government. The CBP appraised the value of the equipment seized at $3,365,773.00. The approximate cost to refurbish The Equipment as a result of the improper storage and maintenance is $890,000.00. Even if the equipment is refurbished, the sale of the equipment will be next to impossible.

24.     Further, Enserv has lost revenue caused by the negligence of the United States Government who wrongfully held The Equipment without justification. Enserv had Contracts in place for the deployment of The Equipment in Dubai and the Middle East, excluding Iran.  Using the Contract rates of the Al Mansoori Contract, the annual lost revenue of Enserv caused by the wrongful and negligent seizure and holding of The Equipment is $9,165,460.00 per year. The total lost revenue, from the time the equipment would have been deployed, had it not been wrongfully and negligently seized on February 21, 2014, to the date The Equipment was returned to Enserv on September 28, 2023, is $87,071,870.00. The gross profit margin on this revenue for Enserv is 35% to 40%.  The total lost gross profit, using the conservative gross profit margin of 35% to Enserv, that was caused by the wrongful and negligent seizure of the Equipment by the Federal Agencies cited above for 9 years and 9 months, is $30,475,154.50.  In fact, Enserv's lost profits continue until the time of the filing of this Complaint, and into the foreseeable future. Had The Equipment not been illegally seized, and had Enserv been able to deploy The Equipment in a timely manner, and properly maintaining The Equipment, in all likelihood, The Equipment would still be deployed and making money for Enserv.

## IV.
## CAUSE OF ACTION – NEGLIGENCE - 28 USCS §2674
## LIABILITY OF UNITED STATES

25. The United States was negligent and grossly negligent in the seizure and holding of The Equipment owned by Enserv for over 9 years. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest to judgment or for punitive damages.28 USCS §2674. In 28 USCS §2682(c)-Exceptions, actions arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, are not subject to liability of the United States unless:

> (1)   the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> (2)   the interest of the claimant was not forfeited;
>
> (3)   the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> (4)   the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law. 28 USCS §2682(c)(1-4)

26. The Equipment belonging to Enserv was seized for the purpose of forfeiture. The interest in The Equipment has never been forfeited by Enserv. The interest in The Equipment was never remitted or mitigated by the United States. Enserv was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

27. Had the illegal seizure and wrongful holding of The Equipment owned by Enserv been carried out by a private individual, under similar circumstances as those in this case, those actions would have exposed the private person to liability for negligence, conversion, and theft. The negligent storage and maintenance by a private individual of The Equipment during the time it was illegally held, would give rise to a negligence claim against a private person. Therefore, the negligent and grossly negligent actions of the United States, related to The Equipment, makes it also liable for damages proximately caused by that negligence, and gross negligence under 28 USCS §2674, proximately caused by its illegal seizure, wrongful detention, and the negligent storage and maintenance of The Equipment.

## V.
## DAMAGES

28. Enserv seeks damages in the past as well as those that in reasonable probability will occur in the future including but not limited to:

    1. Property damage done to The Equipment caused by the negligent storage and maintenance of The Equipment by the Defendant.

    2. Lost profits of Enserv, proximately caused by the illegal seizure and wrongful detention of the equipment, as well as the negligent storage and maintenance of The Equipment from the time The Equipment would have been deployed by Enserv, had it not been improperly seized to the present and for the foreseeable future.

## VI.
## CONDITIONS PRECEDENT

29. All conditions precedent to the filing of this action have occurred or have been performed including the filing of claims pursuant to 28 USCS §2672 with all of the departments and agencies referenced in this Complaint.

## VII.
## JURY DEMAND

30. The Plaintiff hereby demands that this case be presented to a jury at the time of trial and that the jury decide all presented issues of fact. The Plaintiff paid the required jury fee at the time of filing this Complaint for the privilege of having a jury decide this case.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer for their tortious conduct in the form of damages awarded to the Plaintiff by way of judgment against the Defendants after a full and fair trial for all damages, including pre-judgment and post-judgment interest and any other relief to which they may show themselves justly entitled.

Respectfully submitted,

By: */s/ Gerald E. Bourque*
**Gerald E. Bourque**
SDOT Bar No: 15426
SBOT Bar No. 02716500
24 Waterway Avenue, Suite 760
The Woodlands, Texas 77380
Phone: (713) 862-7766
Fax: 832 813-0321
Email: gerald@geraldebourque.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify pursuant the Federal Rule of Civil Procedure 5(b), that a true and correct copy of the foregoing instrument has been filed electronically via the operation of the Court's electronic filing on May 27, 2025.

*/s/ Gerald E. Bourque*
**Gerald E. Bourque**